the legal title to the note and mortgage, with the intent of depriving Samuel Seabury and the answering defendant, as his executrix and legatee, of their rights in the premises through the payments made by him on account of the principal and interest of the mortgage, and that they acquired the same with full knowledge of the facts hereinbefore alleged, and with notice of the rights of said Samuel Seabury. In the prayer for judgment the defendant asks to be subrogated to the rights of the holders of the mortgage to the extent of the sums paid by Samuel Seabury on account of principal and interest, and to be permitted to share pro rata in the proceeds of the foreclosure sale. The plaintiffs demurred to the foregoing defense on the ground that it was insufficient, in law, upon the face thereof, and the demurrer was sustained at the Special Term, and the defendant Susan G. Seabury appeals.

The appellant is not entitled to invoke the doctrine of subrogation here unless her testator, Samuel Seabury, made the payments under an agreement that they should constitute a lien upon the property, or unless he was compelled to make the payment to protect an interest of his own in the mortgaged premises. Schreyer v. Saunders, 39 App. Div. 8, 56 N. Y. Supp. 921; Cole v. Malcolm, 66 N. Y. 363. No such agreement is alleged in the defense which is attacked by the demurrer, and Samuel Seabury does not appear to have had any interest or estate whatever to protect in the property which was the subject of the mortgage. The possibility that he might become the owner of the premises, as an heir of Maria Seabury, did not give him such an interest. The remedy of subrogation has uniformly been denied to a mere stranger or volunteer, with no interest to protect and under no obligation to pay; and a stranger or volunteer, within the meaning of this doctrine, has been held to be "one who in no event resulting from the existing state of affairs can become liable for the debt and whose property is not charged with the payment thereof and cannot be sold therefor." Arnold v. Green, 116 N. Y. 566, 23 N. E. 1. Such, it seems to me, was the position of the appellant's testator, and hence the court at Special Term properly held that the new matter pleaded by the defendant Susan G. Seabury as a defense was insufficient in law.

I think the interlocutory judgment should be affirmed, with costs. All concur.

---

## MINTRAM v. NEW YORK, O. & W. RY. CO.

(Supreme Court, Appellate Division, Second Department.  April 21, 1905.)

1. RAILROADS—ACCIDENTS TO TRAINS—INJURIES TO ENGINEER—CONTRIBUTORY NEGLIGENCE.

Plaintiff, employed as an engineer by the E. Railroad Company at the time of his injury, was running a train over the tracks of defendant company, under a trackage arrangement between the two companies, plaintiff during such operation being subject to the rules and regulations of defendant. While plaintiff was in defendant's yard under the exclusive control of defendant's yardmaster, he was directed to place his train on a certain switch, and await the passage of another train. After

doing so, plaintiff left his engine in charge of his fireman, and went to the baggage car to ascertain from his conductor the whereabouts of another train he had been ordered to meet at that station, and while there was injured in a collision with a switch engine which backed onto the switch and against plaintiff's engine. *Held,* that plaintiff was not guilty of contributory negligence in leaving his engine and going to the baggage car under such circumstances.

2. SAME—RULES.

Rules of defendant railroad company regulating the operation of trains on its main line outside of yards under the control of yardmasters had no application to plaintiff's situation.

Appeal from Trial Term.

Action by Edwin Mintram against the New York, Ontario & Western Railway Company. From a judgment for plaintiff and from an order denying defendant's motion for a new trial, it appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Thomas Watts, for appellant.
John C. R. Taylor, for respondent.

WOODWARD, J. The facts which the jury might properly find under the evidence in this case are, briefly, as follows: The plaintiff was employed by the Erie Railroad Company as a locomotive engineer in running a train over its Crawford Branch from Middletown. The Erie Railroad Company has a trackage arrangement with the New York, Ontario & Western Railroad Company by which the former operates its Crawford Branch trains over about three miles of the latter's track in and about Middletown, and it was conceded on the trial that the plaintiff and other employés of the Erie Railroad Company were governed by the rules and regulations of the Ontario & Western Company while using its tracks. On the day of the accident resulting in the plaintiff's injuries, the Erie train was started from the Main Street Station of the Ontario & Western Company and was run to the Wickham Avenue Station, about half a mile distant, which is the principal station. The Erie train was bound north, and before leaving the Main Street Station it was known that train No. 12 on the Ontario & Western Line was late, and the latter's yardmaster directed the plaintiff to run to the Wickham Avenue Station, where he would meet train No. 12. The yardmaster, who is, by rule 189 of the Ontario & Western Company, to "have charge of the yards where trains are made up, the movement of all trains therein and the force employed," got on board the train drawn by the engine in charge of the plaintiff and rode to the Wickham Avenue Station, where the yardmaster appears to have gone into the station with the conductor in charge of the plaintiff's train to inquire for orders. In the meantime the plaintiff had been engaged in getting his oil cups regulated for the trip, and had just started for the station, when he was met by the conductor and yardmaster, and by the latter was directed to get on his engine and run it to a certain switch because of the fact that train No. 10, another Ontario &

Western train, was on time, and had the right of way over the ·single track railroad. Acting under these orders of the yardmaster, the plaintiff ran the engine to the point indicated, the yardmaster personally accompanying the engine and opening and closing the switch after the train had passed in on the siding, which appears ·to have been the main switch leading to the extensive yards of the railroads at this point. When his engine had come to a ·standstill, after getting out of the way of No. 10, the plaintiff ·climbed down from his engine, leaving the fireman at his post, .and went into the combination car just back of the engine, to inquire of the train conductor as to the whereabouts of train No. 12. This combination car was used as a passenger coach in one end, ·the other end being devoted to a smoking compartment, baggage and express room; and the plaintiff stood talking with the con- ·ductor near some boxes which stood upon the floor. While in this position a switch engine attached to a string of cars backed down the switch upon which the plaintiff's train had been placed by the ·order of the yardmaster, and crashed into the engine, causing a sharp impact with the car in which the plaintiff was standing, throwing him over the boxes, and producing injuries of a serious .and probably permanent character. This switch engine was concededly in the control of the defendant's servants, and there is no ·question raised that the act of the defendant's servant in running ·this switch engine against the train of the plaintiff was negligent, but, the jury having found in favor of the plaintiff, it is urged ·on this appeal that the latter was guilty of contributory negligence ·in that he failed to obey the rules promulgated by the defendant for the operation of trains. We are persuaded, however, that ·the contention of the defendant is without merit, as an examina- ·tion of the rules, in connection with the rule which gives the yardmaster control of trains within the yards, convinces us that they have no relation whatever to such a situation as that disclosed by the evidence. These rules, so strongly relied upon by the ·defendant, were designed for the operation of trains upon the main line outside of yards under the control of yardmasters, and when the plaintiff had safely placed his engine and train upon this siding it was not negligent in him, as a matter of law, to leave his ·engine with the fireman, and go back into the combination car for the purpose of making inquiries which were essential to the safety ·of the running of the engine. It was his duty, as a prudent and careful man, to know where train 12 was before leaving the switch. He had been placed there for the purpose of passing train 10. If train 12 had passed, he was in a position to go on with his trip .after train 10, which was then coming down the main track, had passed, and there is no rule set forth in the evidence which re- ·quired him to put out a flagman, or to notify the fireman that he was going to leave the engine for a few moments. He had, by the ·personal orders of the person authorized to act, been placed in this ·position of safety, and while his engine was standing there it was proper that he should get the information necessary for governing .his future conduct. He was not bound to anticipate that the de-

fendant, through its servants, would back a train of cars down upon his engine, especially as under the circumstances such an act would operate to shove cars out upon the main track in front of train 10, which appears to have been approaching, and already in sight. When the yardmaster placed the plaintiff's train upon the siding, there was an implied promise on his part that he would, in the exercise of his control of the yard, protect the plaintiff from being run into by trains in his charge, and the rules which were designed for the general operation of trains upon the main line had no application to such a situation within the defendant's yards. The learned court at Trial Term submitted all of the questions to the jury in a manner to protect the rights of the defendant, and the verdict ought not to be disturbed.

The judgment and order appealed from should be affirmed, with costs. All concur.